```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 2, 2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
JULIA E. BARONE,                                                  :
                                                                  :
                                                                  :
                                      Plaintiff,                  :          15-cv-2051 (KBF)
                                                                  :
              -v-                                                 :
                                                                  :          OPINION & ORDER
                                                                  :
CAROLYN W. COLVIN, Acting Commissioner of                         :
Social Security,                                                  :
                                                                  :
                                      Defendant.                  :
                                                                  :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

        Plaintiff Julia E. Barone seeks review of the decision by defendant

Commissioner of Social Security (the "Commissioner"), finding that she was not

disabled and not entitled to disability insurance benefits under Title II of the Social

Security Act.  Plaintiff claims she is entitled to disability benefits based on, inter

alia, back injury, migraines, abdominal problems, obesity, and history of asthma,

and that she had been disabled since October 15, 2004.

        This matter is before this Court for the second time.  In March 2008, the

Commissioner found that plaintiff was not disabled. (Tr. 1.)  Plaintiff appealed,

and this Court remanded the case for further findings by the ALJ.  On November

2014, the ALJ made additional findings on the issues identified by the Court's

decision, and again found that plaintiff was not disabled. (Tr. 431-44.)  Plaintiff

brings this action seeking reversal of the ALJ's November 2014 determination. (ECF No. 1.)

Now before the Court are the parties' cross-motions for judgment on the pleadings. For the reasons set forth below, defendant's motion is GRANTED, and plaintiff's motion is DENIED.

I.      PROCEDURAL AND FACTUAL BACKGROUND

        A.      Factual Background

The Court recites only those facts relevant to its review here. A more thorough summary of plaintiff's medical history can be found in the parties' briefing, and in the extensive administrative record.

                1.      Plaintiff's Personal History

Plaintiff was born on April 1, 1981. (Tr. 102.) Plaintiff earned an Associate's degree in Liberal Arts in June 2004. (Tr. 458.) She had also completed vocational training in cosmetology and holds a state license to work as a hairdresser and barber, which she continues to renew. (Tr. 25-26, 458.)

In November 2001, plaintiff was in a car accident. (Tr. 106.) After the car accident, she sought medical treatment, reporting headaches and back pain. (Tr. 214.) However, plaintiff continued to work as a hairdresser and barber in various salons and a cashier at Sears Roebuck, Sunglass Hut, and Subway until October 2004. (Tr. 97-100, 466-69.)

Plaintiff's alleged disability onset date is October 15, 2004.  (Tr. 102.)
Plaintiff filed for disability benefits in November 2006.  (Tr. 82-86.)  Her date last
insured under the Social Security Act is December 31, 2007.  (Tr. 591.)

Plaintiff lives with her physically-disabled husband and their daughter, who
is now seven years old.  (Tr. 456, 458.)  During the November 2014 hearing before
the ALJ, plaintiff testified that she continues to experience symptoms of headaches,
back pain, stomach issues, and hemorrhoids and that she continues to be allergic to
pain medication.  (Tr. 459.)  She is morbidly obese.  (Tr. 308.)  Plaintiff testified that
she and her husband remain inside their home "99 percent of the time" and she
cannot walk more than 10 to 20 feet.  (Tr. 461-62.)

 2. <u>Medical History</u>

  a.  Back Pain

Plaintiff was in a car accident in November 2011.  Two days later, she visited
Dr. Raymond Hui, complaining of headaches and back pain.  (Tr. 102, 214.)  In
March 2002, plaintiff underwent a magnetic resonance imaging ("MRI") scan.  (Tr.
267.)  The MRI indicated "normal" results for the lumbar spine and mild
degenerative changes and mild disc bulging in the mid-thoracic spine, and a "small
disc herniation on the right at T4–5" that did not impinge the spinal cord.  (Tr. 267-
68.)

Plaintiff also saw Dr. John Handago, an orthopedist, from 2007 through
2013.  (Tr. 780, 781.)  On December 18, 2007, plaintiff's first visit to Dr. Handago, a
physical examination revealed plaintiff had a diminished range of motion, spasms

in the dorsal spine, and tenderness to the mid-thoracic region to palpation with spasm present.  (Tr. 781, 804-805.)[1]  Dr. Handago diagnosed plaintiff with lumbar and dorsal herniation at T4-5 and recommended home exercise and observation for plaintiff.  (Id.)  He opined that plaintiff was "totally disabled."  (Id.)[2]

In addition to records from Drs. Hui and Handago, the administrative record contains medical records and reports from many doctors and other treatment providers, including:  Dr. Frederik Vliestra, plaintiff's chiropractor from July 2004 through October 2005 (Tr. 256-64); Dr. Sunitha Polepalle, who plaintiff saw for pain management in 2010 and 2011 (Tr. 695-712); Dr. Neil Dunkelman, who plaintiff saw for pain management from 2010 to 2012 (Tr. 713-749); Dr. Andrew Fashowitz, who plaintiff has seen for pain management since 2012 (Tr. 796).

### b.  Abdominal Surgeries

Plaintiff is morbidly obese.  (Tr. 308, 455.)  In August 2006, plaintiff underwent laparoscopic adjustable gastric band placement ("lap band" surgery) performed by Dr. Peter Kwon.  (Tr. 308-09.)

In October 2006, plaintiff was treated for kidney stones and underwent surgery.  (Tr. 217-22, 340-61.)

In November 2006, plaintiff was admitted to St. Luke's Cornwall Hospital and reported physical injuries after an altercation at work with a co-worker.  (Tr.

---

[1]    This was plaintiff's only visit to Dr. Handago before her date last insured.  20 C.F.R. § 404.321.

[2]    Dr. Handago's treatment notes from 2008 through 2011, after plaintiff's date last insured, show that plaintiff continued to report lumbar pain.  (Tr. 776-780.)  Dr. Handago diagnosed her with lumbar HNP, recommended home exercise and observation and continued to opine that she was totally disabled.  (Id.)

293.)  During that visit, plaintiff was also diagnosed with gallstones, an enlarged

liver, and a mildly enlarged spleen.  (Tr. 296.)  On December 7, 2006, Dr. Peter

Kwon laparoscopically removed plaintiff's gallbladder. (Tr. 305.)

c.  Migraines

Plaintiff also suffers from migraines.  Plaintiff saw Dr. Cayetano C. Co for

migraines from August to December 2006 (Tr. 292, 301).

In March 2007, plaintiff went to Orange Regional Medical Center, again

reporting headaches.  (Tr. 362.)  She underwent an MRI scan, and the results

indicated normal intracranial circulation.  (Id.)  Plaintiff also underwent a

computerized tomography (CT) scan, and the results indicated that plaintiff had

paranasal sinus disease but showed no evidence of acute intracranial hemorrhage

or recent infarct.  (Tr. 363.)

In April 2007, plaintiff visited Dr. Ofer Jacobowitz, an ear, nose, and throat

specialist, for her headaches.  (Tr. 382-83.)  He prescribed an adrenocortical steroid

nasal spray and indicated that plaintiff should be tested for allergies. (Tr. 383.)

In May 2007, plaintiff visited Dr. Carmen Martinez for her headaches.  (Tr.

384-87.)  Dr. Martinez noted that plaintiff demonstrated "no acute distress, despite

having a pain severity of '27.'"  (Tr. 385.)  Dr. Martinez referred plaintiff to a

headache specialist.  (Tr. 387.)

Plaintiff also saw neurologist Dr. Dmitri Gorelov of Crystal Run Healthcare

for her migraines in 2007, 2008, and 2009 (Tr. 900-03, 936-38) and Dr.

Manoucheher Lavian for anxiety and sleep disorder from May 2011 through January 2013.  (Tr. 806-23).[3]

### 3.   Medical Opinions

#### a.  Dr. Peter Kwon

Dr. Peter Kwon, who performed plaintiff's lap band surgery and gallbladder removal surgery and who plaintiff referred to as her primary care physician, (Tr. 34), completed a medical evaluation of plaintiff for the SSA on September 27, 2007. He noted that plaintiff could lift and carry up to 20 pounds "continuously," up to 50 pounds "frequently" and up to 100 pounds "occasionally."  (Tr. 402.)  He opined that plaintiff could sit or stand for up to 8 hours per day continuously, and that she could walk two hours per day out of an 8 hour workday if she took a break every hour. (Tr. 403.)  Dr. Kwon determined that plaintiff could frequently stoop, kneel or crouch and that she had no limitations in her ability to perform listed activities including shopping, walking on uneven surfaces, prepare a meal, care for personal hygiene, and sort paper files.  (Tr. 405-07.)  He found no limitations in plaintiff's use of her hands and legs.  (Tr. 404.)

#### b.  Dr. Frederik Vliestra

Plaintiff also visited Dr. Frederik Vliestra for chiropractic treatment from July 2004 to October 2005.  (Tr. 256-64.)  Dr. Vliestra is also an M.D.  (Tr. 243-50.) In an evaluation for the New York state disability office dated December 11, 2006,

---

[3]      In addition to the medical evidence above, the administrative record contains medical evidence about plaintiff's hemorrhoids (Tr. 269-91), cardiac history (Tr. 942, 1115), and carpal tunnel syndrome (Tr. 764-66).  These conditions were considered by ALJ Edgell and found not to be severe impairments.  (Tr. 434.)  Plaintiff has not challenged this finding.

Dr. Vliestra remarked that manual chiropractic adjustments of the spine provided relief, but that "as long as she was working as a hairdresser, she was g[o]ing to continue to strain and aggravate the spinal muscles." (Id.) He also noted that plaintiff goes dancing once a week and swimming twice a month with no adverse problems. (Tr. at 247.) He noted that plaintiff's physical limitations include that she could lift up to 25 pounds occasionally and stand or walk up to 6 hours per day, and that she had limitations in lifting and reaching in her upper extremities. He found no limitations in plaintiff's ability to sit. (Tr. at 248-49.)

In a subsequent evaluation for the SSA in August 2007, Dr. Vliestra found that plaintiff can lift up to 10 pounds occasionally, that she can sit for 2 hours, walk for 3 hours, and stand for 3 hours in an 8-hour workday with breaks, and can frequently stoop, kneel, climb stairs, and crouch. He found no limitations in any of the daily activities listed. (Tr. 256-61.) Dr. Vliestra did not explain why his evaluation changed from 2006 to 2007.

c. Dr. John Handago

Dr. Handago provided a medical opinion for plaintiff on January 31, 2008, about one and a half months after plaintiff's first visit with him. (Tr. 425.) He opined that plaintiff could carry up to 10 pounds occasionally, and that plaintiff could stand or walk for 2 hours per day and sit for 2 hours per day in an 8-hour workday. (Tr. 423.) He opined that plaintiff could never stoop or climb ladders and that she could occasionally crouch or climb stairs. (Tr. 423.)

d.  Dr. Rose Chan

Plaintiff was evaluated by a consultative examiner, Dr. Rose Chan, on December 20, 2007.  Dr. Chan noted that at the time of the examination, plaintiff was not engaging in any treatment for her alleged back condition and that plaintiff reported she was independent in all activities of self-care.  Plaintiff was able to sit through the examination, walk on her heels and toes, fully squat, get on and off the examination table, and lie down and sit up.  (Tr. 410-413.)  Dr. Chan noted that plaintiff did have chronic low back pain and should avoid heavy lifting and frequent stooping.  (Tr. 412.)

Dr. Chan completed a functional assessment on January 17, 2008 based on the results of the December 20, 2007 evaluation.  (Tr. 414-30.)  Dr. Chan opined that plaintiff could lift or carry up to 50 pounds frequently and up to 100 pound occasionally, that she could sit for up to 4 hours and stand and walk for up to 3 hours each daily in an 8-hour workday, and that she had no restrictions on her abilities to use her lower extremities bilaterally.  (Id.)  Dr. Chan opined that plaintiff had no limitations in any of the daily activities listed.  (Id.)

B.    Procedural Background

1.    Previous Proceedings

Plaintiff first applied for disability benefits in November 2006.  (Tr. 82-86.) The application was denied in January 2007.  (Tr. 49-52).  Plaintiff requested a an ALJ hearing, ALJ Katherine Edgell held the hearing in November 2007.  (Tr. 19-47.)  After the hearing, ALJ Edgell found plaintiff was not disabled.  (Tr. 8-18.)

8

Plaintiff requested that the Appeals Council review the ALJ's decision.  (Tr. 7.)  The Appeals Council denied the request on June 23, 2009, making ALJ Edgell's decision the final determination of the Commissioner.  (Tr. 527-29.)

In 2009, plaintiff filed a civil action in this Court, arguing that the decision of the ALJ to deny her benefits was erroneous as a matter of law and not supported by substantial evidence.  Barone v. Astrue, 09 Civ. 07397 (KBF) (DCF) (S.D.N.Y. 2012). This Court adopted in full the Report and Recommendation of Magistrate Judge Debra Freeman and remanded the case to the ALJ for further findings.  (Tr. 487-526.)  Specifically, on remand the ALJ was to:

> (1) At step one, make a finding as to whether plaintiff engaged in substantial gainful activity after October 15, 2004;
>
> (2) At step three, provide an analysis of the combined effects of all of plaintiff's severe and non-severe impairments;
>
> (3) At step four, clarify, on a function-by-function basis, the rationale behind the residual functional capacity ("RFC") assessment;
>
> (4) At step four, clarify the assessment concerning plaintiff's ability to do her past relevant work as a cashier as plaintiff actually performed such work; and
>
> (5) Make a full analysis of plaintiff's credibility.

(Tr. at 524-25.)

### 2.    September 2013 Hearing

On September 24, 2013, ALJ Katherine Edgell held a second review hearing. (Tr. 452-81.)  Plaintiff testified that, since the last administrative hearing in November 2007, she had been "seeing all the same doctors" and that her medical

conditions of headaches, allergies, back pain, stomach issues, and hemorrhoids had "gotten worse." (Tr. 459.)

Vocational Expert ("VE") Michael Smith also testified at the administrative hearing. (Tr. 470-79.) ALJ Edgell presented VE Smith with a hypothetical person who could carry/lift up to twenty pounds continuously, fifty pounds frequently, and one hundred pounds occasionally; could sit for up to four hours per day, stand for up to three hours per day, and walk up to three hours per day, alternating walking and standing every two hours; had no limitations on upper extremities or fine movement; could not be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, or temperature extremes; and could not stoop frequently. (Tr. 472.) VE Smith testified that such a person could not perform plaintiff's previous job as a barber. (Tr. 473.) VE Smith testified that, although the Dictionary of Occupational Titles ("DOT") does not provide a sit/stand option, in his professional opinion such a person could work as a food service worker (221,000 positions in the national economy), recreational aide (253,110 positions in the national economy), or patient transporter (196,100 positions in the national economy). (Tr. 474.)

### 3.   November 2014 ALJ Decision

On November 20, 2014, ALJ Edgell denied plaintiff's application for benefits after conducting the five-step sequential evaluation process. (See Tr. 431-44.) The ALJ found that at step one, plaintiff had not engaged in substantial gainful activity during the period between the alleged onset date, October 15, 2004, through her date last insured, December 31, 2007. (Tr. 20.) At step two, she found that plaintiff

10

had the following severe impairments: obesity, history of asthma, herniated disc disease, migraine headaches, history of gall stones, and history of kidney stones. (Tr. 434.)

At step three, the ALJ found no impairment or combination of impairments that met or medically equaled the severity of any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 ("Appendix 1"). (Tr. 434-35.)  In particular, she considered whether plaintiff's obesity, either singularly or in combination with plaintiff's other impairments, met or medically equaled the requirements of any listed impairments. She found it did not.  (Tr. 435.)

At step four, the ALJ determined plaintiff's RFC and found that, through the date last insured, plaintiff could perform medium work with the following qualifications and limitations: plaintiff can lift and/or carry up to twenty pounds continuously, up to fifty pounds frequently, and up to one hundred pounds occasionally; plaintiff can sit up to four hours, stand up to three hours, and walk up to three hours, alternating walking and standing, in an eight-hour work day; plaintiff can occasionally stoop; plaintiff must avoid constant exposure to pulmonary irritants or temperature extremes.  (Id.)  The ALJ also noted that plaintiff has no limitations in the use of her upper extremity.  (Id.)  The ALJ also found that plaintiff was unable to perform past relevant work during the period prior to the expiration of insured status.  (Tr. 442.)

In determining plaintiff's RFC, ALJ Edgell found that plaintiff's statements about the "intensity, persistence[,] and limiting effects of [her] symptoms [were] not

entirely credible," noting that plaintiff's subjective complains were "frequently inconsistent." (Tr. 436.) For example, the ALJ noted that plaintiff's chiropractor's treatment notes indicate that, after the alleged disability onset date, plaintiff went dancing weekly and swimming regularly. (Id.) The ALJ also noted that medical records from July 2008 indicate that the claimant reported developing chest pains while eating dinner at a restaurant, developing sharp pulsating pain and arm numbness while driving, and experiencing arm and leg pain while shopping. (Id.)

At step five, the ALJ concluded that, based on the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2 and the testimony of VE Smith, plaintiff, through the date last insured, was able to perform jobs existing in significant numbers in the national economy. (Tr. 443.) Specifically, the ALJ noted that VE Smith testified that plaintiff could perform as a food service worker (221,000 jobs in the national economy) or a patient transporter (196,100 jobs in the national economy). (Id.) Accordingly, the ALJ concluded that plaintiff was not disabled under the Social Security Act. (Tr. 444.)

II.    APPLICABLE LEGAL PRINCIPLES

A.    Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted). Therefore,

12

"[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " Id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)).

### B.   The Disability Standard

The Commissioner will find a claimant disabled under the Act if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). The disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in [Appendix 1]. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a

13

> claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citation and footnote omitted); see also Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998).  The claimant bears the burden of proof in steps one through four, while the Commissioner bears the burden in the final step. Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

C.     Review of the ALJ's Judgment

The Commissioner and ALJ's decisions are subject to limited judicial review. The Court may only consider whether the ALJ applied the correct legal standard and whether his or her findings of fact are supported by substantial evidence. When these two conditions are met, the Commissioner's decision is final.  See Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) ("We set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." (citation omitted)); 42 U.S.C. § 405(g).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Richardson v.

14

Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).  If the

Commissioner and ALJ's findings as to any fact are supported by substantial

evidence, then those findings are conclusive.  42 U.S.C. § 405(g); Diaz v. Shalala, 59

F.3d 307, 312 (2d Cir. 1995).

    While the Court must consider the record as a whole in making this

determination, it is not for this Court to decide de novo whether the plaintiff is

disabled.  See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Beauvoir v. Chater,

104 F.3d 1432, 1433 (2d Cir. 1997); Veino, 312 F.3d at 586 ("Where the

Commissioner's decision rests on adequate findings supported by evidence having

rational probative force, we will not substitute our judgment for that of the

Commissioner.").  The Court must uphold the Commissioner's decision upon a

finding of substantial evidence, even when contrary evidence exists.  See Alston v.

Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to

support either position, the determination is one to be made by the factfinder."

(citation omitted)); see also DeChirico, 134 F.3d at 1182-83 (affirming an ALJ

decision where substantial evidence supported both sides).

    Finally, it is the function of the Commissioner, not the Court, "to resolve

evidentiary conflicts and to appraise the credibility of witnesses, including the

claimant."  Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d

Cir. 1984) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642

(2d Cir. 1983)) (internal quotation mark omitted); see also Gernavage v. Shalala,

882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995) ("Deference should be accorded the

15

ALJ's [credibility] determination because he heard plaintiff's testimony and observed his demeanor." (citations omitted)).  An ALJ's decision on credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Soc. Sec. Ruling 96–7p, 61 Fed. Reg. 34484.

        D.    The Treating Physician Rule

      "[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician," although an ALJ need not afford controlling weight to a treating physician's opinion that is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citations omitted); see also Burgess, 537 F.3d at 128.  An ALJ who does not accord controlling weight to the medical opinion of a treating physician must consider various factors, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; [and] (iv) whether the opinion is from a specialist."  Halloran, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). After considering these factors, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

16

Although the ALJ will consider a treating source's opinion as to whether a claimant is disabled or able to work, the final responsibility for deciding those issues is reserved to the Commissioner, and the treating source's opinion on them is not given "any special significance."  20 C.F.R. § 416.927(d)(3); see also Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 (July 2, 1996); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).  When a finding is reserved to the Commissioner, "the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.  A treating physician's statement that the claimant is disabled cannot itself be determinative."  Snell, 177 F.3d at 133.  It is the ALJ's duty, as the trier of fact, to resolve conflicting medical evidence.  See Richardson, 402 U.S. at 399.

E.    The ALJ's Duty to Develop the Record

Although "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," "the ALJ generally has an affirmative obligation to develop the administrative record."  Burgess, 537 F.3d at 128 (citations and internal quotation marks omitted).  SSA regulations require an ALJ to "inquire fully into the matters at issue and . . . receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters."  Id.  (quoting 20 C.F.R. § 702.338).  "In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'"  Id. at 129 (citation omitted); see also Calzada v. Asture, 753 F. Supp. 2d 250, 277

17

(S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." (citing Perez, 77 F.3d at 47)).

III.   DISCUSSION

Plaintiff advances three arguments in support of her position that ALJ Edgell erred in finding that she was not disabled:  (1) by misapplying the treating physician rule by not assigning controlling weight to Dr. John Handago's opinion, (2) by failing to analyze the combined effect of plaintiff's impairments, and (3) by relying on VE testimony that was based on an incomplete hypothetical and in unresolved conflict with the DOT.  The Court finds no such errors.

A.   Treating Physician Rule

Plaintiff argues that the ALJ misapplied the treating physician rule in that the ALJ erred in not assigning controlling weight to the opinion of orthopedist Dr. John Handago, who diagnosed plaintiff with lumbar and dorsal herniation at T4-5, opined that plaintiff was "totally disabled," and submitted a medical opinion questionnaire that indicated plaintiff had numerous limitations.  (Tr. 422-25, 781.)[4] The Court, however, finds plaintiff's argument meritless and that the ALJ did not err in according little weight to Dr. John Handago's opinion.  (Tr. 442.)

---

[4]   In the January 2008 medical opinion questionnaire, Dr. Handago opined that plaintiff could lift/carry ten pounds occasionally and frequently, could stand and walk for two hours during an eight-hour day, and could sit for two hours in an eight-hour day.  (Tr. 422.)  He also opined that she could sit for thirty minutes before changing position, stand for twenty minutes before changing position, and would need to walk every five minutes for five minutes.  (Tr. 423.)  He also opined that plaintiff would need to lie down 2-3 times per day at unpredictable intervals during work shift.  (Id.)

First, the plaintiff has failed to establish that Dr. Handago is a treating physician for the purposes of the Social Security Administration when he rendered the opinion in question.  20 C.F.R. § 404.1527(c)(2)(i) states that the ALJ will give a physician's opinion more weight than a non-treating physician if the physician has "has seen [the plaintiff] a number of times and long enough to have obtained a longitudinal picture of [plaintiff's] impairment."  20 C.F.R. § 404.1527(c)(2)(i).  In addition, the Second Circuit has emphasized that "[t]he opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient."  Mongeur v. Heckler, 722 F.2d 1033, 1039 n2. (2d Cir. 1983).  Here, Dr. John Handago's opinion is not entitled to controlling weight because he was not a treating source when he submitted a medical opinion questionnaire regarding plaintiff's ability to do work-related activities.  (Tr. 422-26.)  Dr. Handago had seen plaintiff only once, in December 2007, before completing the medical opinion questionnaire in January 2008.  (Tr. 421.)  A physician who only saw the plaintiff "once or twice" is not "entitled to the extra weight of that of a 'treating physician.'"  Mongeur, 722 F.2d at 1039.  In this case, the ALJ relied instead on the opinions of plaintiff's other physicians, including Dr. Kwon, whom plaintiff saw numerous times and testified was her "most regular doctor" and "primary care" doctor.  (Tr. 34, 36.)

Even if the Court were to consider Dr. Handago as a treating source, the ALJ properly considered the factors required under 20 C.F.R. § 404.1527 and thus

properly assigned little weight to Dr. Handago's opinion.  The ALJ considered the length and nature of the extent of the treating relationship (noting that Dr. Handago had only examined plaintiff once before completing the medical opinion questionnaire), the supportability of Dr. Handago's medical opinion (noting that Dr. Handago did not perform any diagnostic examinations or support his functional assessment with objective medical evidence), the consistency of Dr. Handago's medical opinion (noting that it is not "consistent with the opinions of other consultative and examining physicians or the [plaintiff's] own testimony regarding her daily functioning during this time"), and specialization (recognizing that Dr. Handago is an orthopedic surgeon).  (Tr. 441-42.)

The Court also notes that a treating source's opinion as to the ultimate conclusion of whether a claimant is disabled "cannot itself be determinative."  Snell, 177 F.3d at 133.  Here, the ALJ considered the totality of the evidence and made a contrary determination supported by such evidence.  See Richardson, 402 U.S. at 399; Mongeur, 722 F.2d at 1039 ("The opinion of a treating physician is not binding if it is contradicted by substantial evidence.").  Thus, the ALJ did not err in according little weight to Dr. Handago's assessment.[5]

---

[5]     Plaintiff cites Murray v. Astrue, No. 07 CV 10637 (HB), 2008 WL 4580020 (S.D.N.Y. Oct. 14, 2008), to support her argument that Dr. John Handago's opinion should be given controlling weight, but this argument fails.  Unlike in the instant case, the opinion of the physician in Murray was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case."  Murray, 2008 WL 4580020 at *7.  Dr. Handago, on the other hand, did not conduct any evaluations other than a single physical examination when he rendered his assessment.  (Tr. 442.)

B.    <u>Plaintiff's Combined Impairments</u>

Plaintiff argues that the ALJ failed to provide a reasoned analysis of the combined effect of plaintiff's impairments.[6]  The Court disagrees.

A determination by an ALJ "must contain a sufficient explanation of [her] reasoning to permit the reviewing court to judge the adequacy of [her] conclusions." <u>Sava v. Astrue</u>, No. 06 Civ. 3386 KMK GAY, 2010 WL 3219311, at *3 (S.D.N.Y. Aug. 12, 2010).  The Second Circuit has upheld even one-sentence conclusions at step three because "the absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence."  <u>Berry v. Schweiker</u>, 675 F.2d 464, 467-68 (2d Cir. 1982).  Here, the ALJ did far more than that.  ALJ Edgell clearly stated that her review of the medical record revealed a lack of any evidence supporting a finding that plaintiff's conditions met a listed impairment.  She also noted that no physician or other medical source—treating, examining, or non-examining—has made findings or rendered opinions to support a listed impairment.  In reaching this finding, the ALJ gave "specific consideration" to "the applicable sections of listings 1.00 Musculoskeletal System, 3.00 Respiratory System, and 5.00 Digestive System of the listed impairments"  as well as

---

[6]      Plaintiff does not specifically argue that the ALJ did not adequately consider all of the applicable listings and SSA guidelines as to the combined effect of impairments.  In fact, the ALJ did consider "SSR 02-1p regarding Obesity, both singularly and in combination with the [plaintiff's] underlying impairments."  (Tr. 435.)  Rather, plaintiff only argues that the ALJ did not provide a "reasoned analysis."

considering "SSR 02-1p regarding Obesity, both singularly and in combination with the [plaintiff's] underlying impairments." (Tr. 435.)

While the ALJ could have been "more specific in detailing the reasons for concluding" that the combined effects of plaintiff's conditions did not satisfy a listed impairment," there is an utter lack of "compelling contradictory evidence from the plaintiff" that plaintiff <u>did</u> satisfy any listing. <u>Otts v. Comm'r of Soc. Sec.</u>, 249 F. App'x 887, 889 (2d Cir. 2007). Moreover, "the absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that [her] determination was supported by substantial evidence." <u>Salmini v. Comm'r of Soc. Sec.</u>, 371 F. App'x 109, 112 (2d Cir. 2010). Here, the ALJ's detailed discussion of the medical record in the step four portion of her decision amply supports her determination at step three that plaintiff's combined conditions did not meet a listed impairment.

The ALJ noted that no medical source has documented findings or opinions that plaintiff meets the requirements for listing 1.00 Musculoskeletal System. "To qualify as a listed impairment, disorders of the musculoskeletal system, particularly of the spine, require evidence of:

> a. nerve root compression 'characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss' and, if the injury involves the lower back, a 'positive straight-leg raising test;'
>
> b. spinal arachnoiditis, confirmed by an operative note or pathology report, 'manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours;' or

c. lumbar spinal stenosis with 'chronic nonradicular pain and weakness'
which results in the inability to ambulate effectively, as defined by the
regulations."

Johnson v. Colvin, 14 Civ. 2334 CM JLC, 2015 WL 400623, at *11 (S.D.N.Y. Jan. 30,

2015), report and recommendation adopted, 2015 WL 3972378 (S.D.N.Y. June 1,

2015).   Even though plaintiff argues that Dr. Handago's opinion should be afforded

more weight, there is no indication that Dr. Handago found symptoms or results

that would meet any of the above requirements.   For example, he noted that

plaintiff had intact reflexes, motor, and sensory functions.   (Tr. 441, 799-805.)

There is no evidence of "spinal arachnoiditis" or any weakness or pain that resulted

in the inability to ambulate effectively.   (Id.)   There was also substantial evidence in

the record and summarized by the ALJ that the plaintiff's combined impairments

were not severe enough to meet listings 3.00 Respiratory System or 5.00 Digestive

System.   (See, e.g., Tr. 437 (discussing Dr. Kwon's noting plaintiff's history of, inter

alia, asthma, migraines, GE reflux disease, and back problems, reporting normal

physical examination results, and summarizing EKG results showing normal sinus

rhythm and mild gastritis, and successful gastric band surgery without

complications)).   For these reasons, this Court finds no error in ALJ's step three

analysis.

   C.   Vocational Expert Testimony

   Plaintiff's third argument is that VE Smith's testimony is "the product of an

incomplete hypothetical" and therefore not supported by substantial evidence.   (Pl.'s

Mem. at 18.)   Plaintiff also argues that the ALJ Edgell violated Social Security

23

regulations that impose an affirmative responsibility on the ALJ to resolve any conflict between vocational evidence the VE provides and the DOT.  See Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).  The Court disagrees on both points.

### 1.  Incomplete Hypotheticals

Plaintiff argues that "the ALJ failed to include limitations associated with the severe impairments of Obesity, Herniated Disc Disease[,] and Migraine Headaches" when posing a hypothetical to the VE.  (Pl.'s Mem. at 21.)  This Court finds that ALJ Edgell's hypothetical was complete because it was based on the limitations determined pursuant to the RFC analysis.[7]

"The regulations require that if a 'severe' impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis."  Williams v. Astrue, 06 Civ. 1355, 2011 WL 831426, at *15 (N.D.N.Y. Mar. 3, 2011).  At step two, ALJ Edgell determined plaintiff had severe impairments: obesity, history of asthma, herniated disc disease, migraine headaches, history of gall stones, and history of kidney stones.  (Tr. 434.)  At step three, she found that plaintiff's impairments combined did not meet or medically equal the severity listed in Appendix 1.  At step four, the ALJ found that plaintiff had the RFC to perform medium work but with limitations:  (1) that plaintiff can "lift and/or carry up to 20 pounds continuously, up to 50 pounds frequently, and up to 100 pounds occasionally"; (2) that plaintiff "can sit up to 4 hours, stand up to 3

---

[7]       Although plaintiff also challenged the ALJ's evaluation of Dr. Handago's opinions in the RFC section, the Court has above rejected plaintiff's argument, and therefore the RFC analysis is unimpaired.

hours, and walk up to 3 hours, alternating walking and standing every two hours, in an eight-hour work day"; (3) that plaintiff can occasionally stoop but had "no limitations in the use of her upper extremity"; and (4) that plaintiff "must avoid constant exposure to pulmonary irritants or temperature extremes." (Tr. 435.) Plaintiff does not challenge the adequacy of the RFC determination.

The ALJ's hypothetical incorporated the RFC determination made at step four. (Tr. 472.) Plaintiff's argument that the ALJ erred by failing to specifically enumerate plaintiff's various impairments is meritless, because there is no requirement that an ALJ do so. In <u>Calabrese v. Astrue</u>, 358 F. App'x 274, 277 (2d Cir. 2009), the Second Circuit held that "[i]t is of no moment that the ALJ failed explicitly to reference" one of the claimant's impairments when describing a hypothetical because "a hypothetical 'need not frame the claimant's impairments in the specific diagnostic terms used in the medical reports, but instead should capture the concrete consequences of those impairments.'" (citing <u>England v. Astrue,</u> 490 F.3d 1017, 1023 (8th Cir. 2007)); <u>see also</u> <u>Mancuso v. Astrue</u>, F. App'x 176, 179 (2d Cir. 2010) (rejecting a challenge to the hypothetical when the hypothetical "mirrored" the RFC and the RFC was "supported by substantial evidence"); <u>Salmini</u>, 371 F. App'x at 114 (same).

Thus, this Court finds that ALJ Edgell's hypothetical was complete because it was based on the limitations determined via the RFC analysis.[8]

---

[8]     Plaintiff cites <u>Williams v. Astrue</u> in support her claim that ALJ Edgell's hypotheticals were incomplete, but this argument is without merit.  2011 WL 831426.  In <u>Williams</u>, the ALJ's erroneous hypothetical limited plaintiff "to simple, routine, unskilled work," which the Court found did not

2.   <u>Conflicting Vocational Expert Testimony</u>

Plaintiff also argues that ALJ Edgell violated Social Security regulations when she failed to clarify an apparent conflict between the VE's testimony and occupational information supplied by the DOT.  Specifically, VE Smith testified that plaintiff could perform jobs that permitted her to sit or stand; VE Smith testified that he based his testimony on his professional experience because the DOT lacked a sit/stand option.  (Tr. 474.)

Social Security Ruling ("SSR") 00–4p requires that:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00–4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).  Accordingly, the ALJ has a duty to elicit a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT, and to explain the resolution of the conflict before relying on the VE evidence in the decision.  <u>Id.</u>

Here, the ALJ relied upon the availability of a sit/stand option in making her determination that plaintiff could find alternative work, (Tr. at 443), and plaintiff contends that the ALJ violated SSR 00–4p by failing to explain what she characterizes as a "conflict" between the VE's testimony as to a sit/stand option and

---

reflect plaintiff's "mild mental retardation."  2011 WL 831426 at *15.  No such discrepancy or omission is at play in the present case.

the DOT's lack of citation to occupations with a sit/stand option.  (Pl.'s Mem. at 19-20.)  The Court disagrees.  Though the Second Circuit has not ruled on this issue, several sister circuits have held that a plaintiff relying on SSR 00–4p must identify actual, not potential, conflict between the expert's opinion and the DOT.  See Allen v. Astrue, 05 Civ. 0101, 2008 WL 660510, at *10 (N.D.N.Y. Mar. 10, 2008) (citing Massachi v. Astrue, 486 F.3d 1149, 1154 n. 9 (9th Cir.2007)); Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007); Carey v. Apfel, 230 F.3d 131, 146–47 (5th Cir. 2000).

There is no actual conflict under SSR 00-4p.  Because the DOT does not address the availability of a sit/stand option, the silence is not contradicted by the vocational expert's testimony which endorsed such an option.  See, e.g., Wellington v. Astrue, No. 12 Civ. 3523 KBF, 2013 WL 1944472, at *4 (S.D.N.Y. May 9, 2013); Thompson v. Astrue, 09 Civ. 1968, 2010 WL 3878729 (D.S.C. June 16, 2010), report and recommendation adopted, 09 Civ. 1968, 2010 WL 3880047 (D.S.C. Sept. 28, 2010), aff'd, 442 F. App'x 804 (4th Cir. 2011) ("Because the DOT does not address the availability of a sit/stand option, it was perforce not irreconcilable with the VE's testimony."); see also Flores v. Colvin, 546 F. App'x 638, 641 (9th Cir. 2013).  Cf. Zirnsak v. Colvin, 777 F.3d 607, 619 (3d Cir. 2014).  Moreover, to address the lack of mention of the sit/stand option in the DOT, the VE stated his basis for the testimony regarding the sit/stand option was his experience as a vocational expert and the ALJ's decision based on this testimony was not in error.  (Tr. 474.)  See Cato v. Colvin, No. 13 Civ. 04889, 2015 WL 1481646, at *8 (N.D. Cal. Mar. 31, 2015).  Thus, plaintiff's claim that ALJ Edgell violated SSR 00-4p because she did

not resolve a purported conflict between vocational evidence VE Smith provided and

the DOT is without merit.[9]

IV.    CONCLUSION

For these reasons, defendant's motion for judgment on the pleadings is

GRANTED and plaintiff's motion for judgment on the pleadings is DENIED.  The

Clerk of Court is directed to terminate the motions at ECF Nos. 13 and 16, to enter

judgment for defendant, and to terminate this action.

SO ORDERED.

Dated:        New York, New York
              August 2, 2016

_____
                    KATHERINE B. FORREST
                    United States District Judge

---

[9]      The Court rejects plaintiff's argument that VE Smith undermined his credibility because he
stated at the September 2013 ALJ hearing that the DOT contained the number of jobs available in
the economy.  (Tr. 479.)  Plaintiff's counsel had the opportunity to ask follow-up questions and
instead said "Okay" and stated that he had no further questions.  (Id.)